120 N.J. Super. 54 (1972)
293 A.2d 238
DONALD BURSTEIN AND ELLEN BURSTEIN, PLAINTIFFS,
v.
LIBERTY BELL VILLAGE, INC., DEFENDANT.
Superior Court of New Jersey, Bergen County District Court.
Decided June 15, 1972.
*55 Mr. John F. McCann, attorney for plaintiffs.
Messrs. Freint & Jacobs, attorneys for defendant.
LESTER, J.D.C.
The main issue to be determined in this case is whether the tenant-plaintiffs should receive double the amount of security retained by the landlord. The defendant maintains that the deductions which were for late payments of rent were justified under the lease's provisions. On the other hand, the tenants contend in the alternative that (a) the late charges were not justified; (b) the deductions were unconscionable, and (c) the deductions were incorrectly made. Further, the tenants argue contrary to the landlord's position that if the court finds that the deductions were improper, then the court has no discretion but must award punitive damages under Chapter 223 of the Laws of 1971 (N.J.S.A. 46:8-19 et seq.) even if the deductions were made in good faith.
On eight occasions after the plaintiffs failed to pay their rent before the due date, the landlord, Liberty Bell Village Inc., instituted dispossess proceedings T 23204, T 23470, T 23916, T 24252, T 24370, T 24629, T 24883, T 25193. These actions were "settled" when the tenants paid the rent to defendant. On each of these occasions, and on one occasion when suit was not started, the landlord filled in the following form letter and sent it to the tenants:
 ________ ________ ________
 Name Apt. No. Date
 _____________ Apartments
Dear Resident:
 Because your ________ rent was paid late ________ and
 month date
you did not include the late penalty charge in your rent payment, we now charge your security deposit the $ ____ late rent penalty. We will charge your security deposit this amount each time your rent is paid late and the extra late charge is not included in your rent payment for that month.

*56 As a reminder to you, your lease calls for rent to be paid in ADVANCE on the FIRST day of each and every calendar month and you are considered in default of your lease if you are not paid up in full at that time.
THE MANAGEMENT [Emphasis added]
The total late rent penalties on these nine notices amounted to $207. After the tenancy was terminated the landlord tendered a check for $136 to the Bursteins. There was a notation on the check, that it was for "return of security deposit minus late rent costs and damages apt. G-13." The Bursteins had given a security deposit of $358, which was deposited in a bank in Little Ferry, New Jersey. The Bursteins refused to accept this check and filed suit for return of their full security deposit plus punitive damages authorized by statute. A $15 deduction made by the landlord for alleged reimbursement for actual repairs will not, by consent of the parties, be considered in this matter and this opinion and will deal solely with the deductions for so called "late charges."
The lease signed by the Bursteins contained the following provisions specifying that rent is to be paid
In advance on the first day of each and every calendar month during the said term, at the office of the Landlord, or the landlord's agent, at the above address (or to whosoever the Landlord may from time to time direct in writing). Lessee shall be deemed in default hereunder if the above stated rental (including garage rent) is not paid in full on above stated due dates.
That the Lessee deemed in default of his rent will be assessed a penalty at the sum of $5. Dollars each calendar month his rent is not paid in full and posted by noon of the 5th day of each calendar month at the office of the Landlord, and that the penalty shall run at the rate of one dollar per day thereafter for each calendar day the Lessee is in default of his rent.

* * * * * * * *
30. That the failure of the Landlord to insist upon strict performance of any of the covenants or conditions of this lease, or to exercise any option herein conferred in anyone or more instances, shall not be construed as a waiver or relinquishment for the future of any such covenants, conditions, or options, the same shall be and remain in full force and effect.

* * * * * * * *

*57 SECURITY
The Tenant has this day deposited with the Landlord, the sum of $3458 [$358]. Dollars as security for the full and faithful performance by the tenant of all the terms and conditions upon the tenant's part to be performed, which said sum shall be returned to the tenant after the time fixed as the expiration of the term hereof, provided the tenant has fully and faithfully carried out all of the terms, covenants and conditions on his part to be performed. In the event the tenant fails to fulfill all of the terms, covenants and conditions, this security shall be applied in addition to but not as full payment to other costs, charges, fees, damages, penalties or assessments agreed upon throughout throughout the lease contract, towards the damages and rent loss sustained by the Landlord by reason of the default of the tenant.
This security will not be applied or construed to be applied as paying monthly rent or in lieu of monthly rent during the term of this lease.
"It is a general rule that a lessor is estopped from asserting a forfeiture for a breach of covenant or condition in a lease, or that he waives his right to such a forfeiture, where after and with full knowledge of notice of such breach he accepts rent from his tenant, unless there are circumstances arising from such acceptance of rent by him so as to negative the presumption of his affirmance of the continuance of the lease." 49 Am. Jur.2d, Landlord and Tenant, 1067 at 1031, 1032.
The acceptance of rents accruing subsequent to a default will cause a waiver of the right to enforce the default. Klein v. Journal Square Bank Bldg., 110 N.J. Eq. 607 (Ch. 1932). When a claim is due at the time of the consent judgment it is merged into the consent judgment. 47 Am. Jur.2d, Judgments, § 1093 at 149. The penalty provision calling for late charges was due when the rent was accepted. Therefore the late rent charges merged with the payment. Even if there were no merger, the court could and would find that the late charges were excessive and unenforceable under the circumstances. In any event, the court finds that the landlord acted "in good faith" in deducting the late charges from the security deposit. Having determined that the deductions were not justified, the question to be considered is whether *58 the court must assess punitive damages, where defendant acted "in good faith" but in legal error.
N.J.S.A. 46:8-21.1 reads in part:
The court upon finding for the tenant or licensee shall award recovery of double the amount of said moneys, together with full costs of any action.
While this section appears to impose a mandatory punishment, the court concludes that it has discretion to impose a more equitable decision in cases such as this, when good faith deductions are made from the security deposit. Here the landlord believed he had a right to make the deductions he attempted. The language of the lease would so indicate. If the court were to impose on him an added penalty, then an unjust result would be reached. Assume that a landlord orders repairs made to correct damages caused by the tenant's negligence or malice. Assume further that the fair value of these repairs is $50 but that the tradesmen charged $100 to repair the damage and landlord in good faith paid the amount billed. In an action to recover the deposit the court must find for the tenant as to the extra $50. Would the court have to impose a penalty of double the amount of such money withheld? This court does not believe that the Legislature intended any such result. It is illogical and could and would create new problems.
The Legislature recognized the right of the landlord to offset against the security deposit:
* * * any charges expended in accordance with the terms of a contract, lease or agreement * * * [N.J.S.A. 46:8-21.1; emphasis added]
How then to balance the landlord's unwarranted reliance upon the lease against the Legislature's use of the mandatory word "shall"?
The presumption is that the word "shall" in a statute is used in an imperative and not in a directory sense. If an interpretation is sought, it must rest upon something in the character of the legislation *59 or in the context which will justify a different meaning. [Haythorn v. VanKeuren & Son, 79 N.J.L. 101, 105, 106 (Sup. Ct. 1909)]
The security deposit law was intended as a remedial measure to alleviate certain practices engaged in by unscrupulous landlords. It was only intended to deter malicious actions by a landlord. Even before the passage of this statute tenants could recover security deposits which were wrongfully withheld but in good faith by the landlord. The bill was not intended to punish landlords who acted in good faith.
Judgment will be entered for the tenants for the return of their security deposit, $358, plus interest, plus the costs of this suit.