ruptcy S.D.Cal.1991) and *In re Turner,* 101 *B.R.* 751 (Bankruptcy D.Utah 1989).

Accordingly, an order will be entered dismissing the complaint with prejudice and without costs.

619 A.2d 1050

ISIDRO SANCHEZ, PLAINTIFF, v. PETER
VACCARELLI, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County
Special Civil Part

December 16, 1992.

*Bernard K. Freamon* for plaintiff.

*Peter Vaccarelli,* defendant, pro se.

CASSINI, J.S.C.

Plaintiff commenced this action against defendant to recover a security deposit and the statutory penalty pursuant to *N.J.S.A.* 46:8–21.1 for failure to return a security deposit within 30 days of the termination of their lease. The issue presented for determination is whether plaintiff is entitled to the statutory penalty of double damages albeit that plaintiff never moved into the premises. This issue has not been reported in New Jersey.

In October, 1991 plaintiff and defendant entered into an oral lease agreement whereby plaintiff rented a first floor apart-

ment, commencing November 1, 1991. As part of the Lease, the tenant agreed to pay for gas heat and hot water to his apartment.

In addition, plaintiff asserts that the lease agreement between him and the landlord included a promise to reimburse the former for the cost of materials to paint the apartment.

On October 24th and 25th, 1991, plaintiff made deposits with the landlord totalling $675.00 as security for the apartment. Upon acceptance of the deposit, the landlord gave the tenant keys to the apartment in order for the tenant to have access for painting in accordance with their agreement.

On October 26, 1991, before he was scheduled to move in, plaintiff went to the apartment to paint. While in the process of painting plaintiff became aware of the fact that the heating system was constructed in such a way that the heat for the entire house was billed to the first floor tenant. To verify this discovery, plaintiff contacted Public Service Electric & Gas Company which confirmed the fact that the heating system was installed in such a manner that the first floor apartment meter supplied and accounted for all the gas that was used for heat and hot water for the entire building. Upon learning of this "misrepresentation" as to the responsibility for the heating bills, plaintiff considered the arrangement to be a breach of the agreement. He immediately attempted to contact the defendant to notify him that he was terminating his lease and that he was demanding the return of his deposit. In addition, he enlisted the aid of Essex–Newark Legal Services in order to obtain the return of his security deposit. All efforts to recover the security deposit were unsuccessful.

In pertinent part, *N.J.S.A.* 46:8–19 provides;

Whenever money or other form of security shall be deposited or advanced on a *contract, lease or license agreement for the use or rental of real property as security for performance of the contract, lease or agreement* or to be applied to payments upon such contract, lease or agreement when due, such money or other form of security, until repaid or so applied including the tenant's portion of the interest or earnings accumulated thereon as hereinafter

provided, shall continue to be the property of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made for the use in accordance with the terms of *the contract, lease or agreement* and shall not be mingled with the personal property or become an asset of the person receiving the same. (Emphasis added).

In addition, *N.J.S.A.* 46:8–21.1 provides, in relevant part:

*Within 30 days after the termination of the tenant's lease or licensee's agreement,* the owner or lessee shall return by personal delivery, registered or certified mail the sum so deposited plus the tenant's portion of the interest or earnings accumulated thereon, less any charges expended in accordance with the terms of a contract, lease, or agreement, to the tenant or licensee, or, in the case of a lease terminated pursuant to P.L.1971, c. 318 (C.46:8–9.1), the executor or administrator of the estate of the tenant or licensee so terminating the lease.

In any action by a tenant, licensee, executor, administrator or surviving spouse for the return of moneys due under this section, *the court upon finding for the tenant, licensee, executor, administrator or surviving spouse shall award recovery of double the amount of said moneys,* together with full costs of any action and in the court's discretion, reasonable attorney's fees. (Emphasis added)

In previously reported cases involving the return of security deposit pursuant to the Security Deposit Act, the tenant *occupied* the premises, that is *the tenant had moved in,* resided at the premises for a period of time and then terminated the tenancy, whether by mutual consent or default, *Veliz v. Meehan,* 258 *N.J.Super.* 1, 609 *A.*2d 45 (App.Div.1992).

*Gibson v. 1013 North Broad Associates,* 172 *N.J.Super.* 191, 194, 411 *A.*2d 711 (App.Div.1980) sets forth pertinent background with respect to return of security deposits:

The statute was enacted to protect tenants from overreaching landlords who require security deposits and then divert them to their own use. *Jaremback v. Butler Ridge Apts.,* 166 *N.J.Super.* 84, 87 [398 *A.*2d 1339] (App.Div.1979); *Smith v. Stark,* 153 *N.J.Super.* 48, 50 [378 *A.*2d 1169] (App.Div.1977); *Watson v. Jaffe,* 121 *N.J.Super.* 213, 214 [296 *A.*2d 537] (App.Div.1972). As indicated by express language of the statute, upon finding for the tenant the judge must award twice the amount wrongfully withheld. *Smith v. Stark,* supra; *Spialter v. Testa,* 162 *N.J.Super.* 421, 433 [392 *A.*2d 1265] (Cty.D.Ct.1978); *Watson v. United Real Estate, Inc.,* 131 *N.J.Super.* 579, 582 [330 *A.*2d 650] (Cty.D.Ct. 1974). Contra, *Burstein v. Liberty Bell Village, Inc.,* 120 *N.J.Super.* 54, 58, 59 [293 *A.*2d 238] (Cty.D.Ct.1972).

Additionally, the court in *Watson v. United Real Estate, Inc.,* 131 *N.J.Super.* 579, 330 *A.*2d 650 (Cty.D.Ct.1974), addressing a similar question concluded:

> The Legislature apparently endeavored to develop and enact an overall scheme to protect a tenant. *If there is not a fixed, sure and meaningful penalty confronting the landlord in the event he withholds the tenant's security, then he has no incentive to return the security deposit.* Without the statutory penalty clause the tenant would be entitled only to usual damages, i.e., his out-of-pocket loss, the security deposit. As a practical matter the landlord would have nothing to lose if he waited for the institution of suit. If no action were ever taken, he would not lose anything except that which he was wrongfully withholding. Under *N.J.S.A.* 46:8–21.1 any retention of the security deposit by the lessor 30 days after expiration of the term of tenant's lease is wrongful except to the extent of charges reasonably expended by the lessor in accordance with the terms of the lease agreement. (Emphasis added).

The court makes one final observation concerning the Security Deposit Act as it relates to this matter; the intent of the parties was that the apartment would be used for dwelling purposes, but the owner did not live there. The Act therefore clearly applies to this tenancy.

It is readily apparent that the statutes, particularly *N.J.S.A.* 46:8–19 and 8–21.1, do not make reference to *possession or vacation* of premises by a tenant to be a condition for invoking the double-damages penalty provision. *N.J.S.A.* 46:8–19 refers to "a contract, lease or license agreement for the use or rental of real property" and *N.J.S.A.* 46:8–21.1 refers to "termination of the tenant's lease or licensee's agreement". The legislative purpose and intent of the Act includes those persons who have a lease, whether oral or written, and who never moved into the premises based upon some act or condition not attributable to that leaseholder.

By recognizing that the issue is not whether a tenant took physical or actual possession of the apartment, but rather that a landlord should not be exonerated for wrongfully withholding a security deposit, the court can adequately "protect tenants from overreaching landlords who require rent security deposits from tenants and then divert such deposits to their personal use." *Watson v. Jaffe,* 121 *N.J.Super.* 213, 214, 296 *A.*2d 537 (App.Div.1972).

Accordingly, this court finds that the statutory penalty is not any less mandatory simply because the tenant did not physical-

ly occupy the premises when the reason for not doing so was no fault of the tenant's. To determine otherwise would allow defendant, and landlords similarly situated, the opportunity to wrongfully retain funds of tenants without any threat of penalty where the landlord exacted a deposit but the tenant did not move in—without fault by the tenant.

Based upon the above considerations, it is clear that the Security Deposit Act applies in the instant case and mandates that the plaintiff receive the statutory penalty of double the amount wrongfully withheld. In this case, double the amount of the total security. *Cottle v. Butler*, 257 *N.J.Super.* 401, 608 *A.*2d 479 (Law Div.1992).

There remains the claim of plaintiff against defendant for failure to reimburse plaintiff for out-of-pocket expenses for painting materials following the breach of the agreement by defendant.

I conclude that the recoverable damages for out-of-pocket expenses in this case are such as were reasonably within the contemplation of the parties at the time of their oral agreement. *Locks v. Wade* 36 *N.J.Super.* 128, 114 *A.*2d 875 (App.Div.1955). With that view in mind, this court will compensate plaintiff for the benefit received by defendant who breached the agreement.

Judgment is hereby entered in behalf of plaintiff for the sum of $1,350.00 (representing the security deposit of $675.00, doubled according to *N.J.S.A.* 46:8–21.1) plus the value of the painting, $132.23 for a total of $1,482.23, plus statutory costs of suit and reasonable attorney's fees in these circumstances. *R.* 4:42–9(b), (c).